Shana Lazerow, State Bar No. 195491
Adrienne L. Bloch, State Bar No. 215471
COMMUNITIES FOR A BETTER ENVIRONMENT
1400 Broadway, Suite 701
Oakland, California  94612
Tel: (510) 302-0430
Fax: (510) 302-0438

Attorneys for Plaintiff
COMMUNITIES FOR A BETTER ENVIRONMENT

Sejal Choksi, State Bar No. 222093
Amy Chastain, State Bar No. 235745
BAYKEEPER
785 Market Street, Suite 850
San Francisco, California  94103
Tel: (415) 856-0444 x 107
Fax: (415) 856-0443

Attorneys for Plaintiff
BAYKEEPER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, a California non-profit corporation, and BAYKEEPER, a California non-profit corporation, | CASE NO. CV 06-07853 JSW |
| Plaintiffs, | [Proposed] CONSENT AGREEMENT |
| vs. | |
| OWENS ILLINOIS, dba OWENS-BROCKWAY, a corporation, | |
| Defendant. | |

WHEREAS, Communities for a Better Environment ("CBE") is a California non-profit public benefit corporation with offices in Oakland and Huntington Park, California. CBE works to protect and enhance the environment and public health primarily in California's urban areas. For nearly 30 years, CBE has actively advocated and litigated water quality issues in California;

WHEREAS, Baykeeper is a California non-profit public benefit corporation dedicated to the protection and enhancement of the water quality of the San Francisco Bay-Delta estuary and its watershed for the benefit of its ecosystems and human communities;

WHEREAS, Owens-Brockway Glass Container Inc. ("Owens-Brockway") is a Delaware corporation and a wholly-owned subsidiary of Owens-Illinois, Inc. Owens-Brockway operates a glass container manufacturing facility located at 3600 Alameda Avenue in Oakland, California ("the Facility").

WHEREAS, storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 91-13-DWQ (as amended by Water Quality Order 92-12 DWQ and 97-03-DWQ), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter "General Permit");

WHEREAS, on August 22, 2006 and May 29, 2007, CBE and Baykeeper served Owens-Brockway, the United States Environmental Protection Agency, the State Water Resources Control Board, the California Regional Water Quality Control Board, the United States Attorney General and other individuals and entities with notices of intent to file suit (collectively,"60-Day Notices") under sections 505(a)(1) and (f) of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the General Permit at the Facility;

WHEREAS, on December 22, 2006, CBE and Baykeeper (collectively, "the Plaintiffs") filed a complaint alleging violations of the Clean Water Act and the General Permit against Owens-Brockway ("the Complaint") in the United States District Court for the Northern District of California, thereby initiating this action, case number CV 06-07853 ("the Lawsuit");

1      WHEREAS, prior to execution of this Agreement, Owens-Brockway voluntarily

2    undertook improvements at the Facility designed to reduce storm water discharges and pollutants

3    in storm water discharges, at a significant cost and expense.  These included, among others,

4    repaving work, a closed circuit television analysis of the storm drain system, the installation of

5    silt fencing, and the installation of berms to more effectively control storm water discharges and

6    to divert storm water to either infiltration areas or for use in the Facility's operations.

7      WHEREAS, Owens-Brockway denies the material allegations of the 60-Day Notices and

8    the Lawsuit, denies liability for the causes of action alleged in the Complaint, and denies that it is

9    or has been in violation of the General Permit or the Clean Water Act;

10      WHEREAS, the Parties disagree as to whether the Action Levels or Benchmarks specified

11    in Exhibit A to this Agreement constitute enforceable numerical limitations under either the

12    General Permit or Clean Water Act for the concentration of pollutants in storm water discharges

13    from the Facility;

14      WHEREAS, this Consent Agreement ("Agreement") shall be submitted to the United

15    States Department of Justice for the statutory review period pursuant to 33 U.S.C. § 1365(c);

16      WHEREAS, CBE, Baykeeper, and Owens-Brockway (collectively, "the Parties") agree

17    that it is in their mutual interest to resolve this Lawsuit without further litigation by entering into

18    this Agreement and submitting it to the Court for its approval, and by stipulating that the Court

19    retain jurisdiction over the Parties for purposes of enforcement of the Agreement as provided

20    herein; and

21      WHEREAS, the objective of this Agreement is to resolve the Lawsuit that Plaintiffs

22    brought for the purpose of ensuring that Owens-Brockway complies and maintains compliance

23    with the Clean Water Act and the General Permit through the obligations set forth in this

24    Agreement.

25    **NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE**

26    **PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

27    1.   The Court has jurisdiction over the subject matter of this action pursuant to Section

28    505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

-3-

1     2.    Venue is appropriate in the Northern District of California pursuant to Section

2    505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(a), because the Facility at which the

3    alleged violations took place is located within this District.

4     3.    CBE and Baykeeper have standing to bring this action.

5  **I.    OWENS-BROCKWAY'S OBLIGATIONS**

6     A.    **Non-Storm Water Discharges.**  Owens-Brockway shall comply with the provisions of

7    the General Permit pertaining to non-storm water discharges, including the General Permit's

8    prohibition on unauthorized non-storm water discharges.

9     B.    **Industrial Storm Water Pollution Control Measures.**  In accordance with the terms

10    of this Agreement, Owens-Brockway shall implement the following Best Management Practices

11    ("BMPs") intended to prevent or reduce the discharge from the Facility of storm water containing

12    pollutants associated with industrial activities.

13     4.    <u>Designation of Process Areas.</u>  Prior to the Effective Date of this Agreement (as

14    defined in Paragraph 41 below), Owens-Brockway shall identify on its Facility Site Map the

15    portions of the Facility where industrial processes occur.

16     5.    <u>Designation of Storage Areas.</u>  Prior to the Effective Date of this Agreement, Owens-

17    Brockway shall identify on its Facility Site Map all outdoor sorting and storage areas.

18     6.    <u>Storm Water Routing.</u>  Prior to the Effective Date of this Agreement, Owens-

19    Brockway shall implement structural BMPs (e.g., install berms and re-grade if necessary) to direct

20    storm water from the paved areas of the Facility that drain to the Fruitvale Avenue outfall (Outfall

21    001) toward an on-site infiltration area or to the Facility's basement for use as cooling water.

22    After these structural BMPs have been implemented, Owens-Brockway anticipates that the only

23    storm water being discharged to Outfall 001 will be from Facility roofs.

24     7.    <u>Storm Drain Sealing.</u>  Within thirty (30) days of implementing the structural BMPs

25    described in paragraph 6, Owens-Brockway shall permanently seal all storm drains leading to

26    Outfall 001.

27

28

8.   <u>Absorbent Drain Inserts in Storm Drains.</u>  Prior to the Effective Date of this Agreement, Owens-Brockway shall install absorbent drain inserts, designed to collect oil, sediments, and other pollutants, in each active storm drain.

9.   <u>Storm Drain Labeling.</u>  Within thirty (30) days of the Effective Date of this Agreement, Owens-Brockway shall label all storm drains at the Facility, where necessary.

10.  <u>Storm Drain Covers.</u>  In Dry Seasons (June 1 through September 30) during the term of this Agreement, Owens-Brockway shall install covers on all active storm drains at the Facility.

11.  <u>Storm Drain Inspection, Cleaning, and Recordkeeping.</u>  In Wet Seasons (October 1 through May 31) during the term of this Agreement, Owens-Brockway shall inspect the storm drains at the Facility prior to forecasted storm events, and shall clean, repair or replace any absorbent drain insert, as necessary.  Owens-Brockway shall maintain a log of all inspections, maintenance, and cleaning of storm drains at the Facility. The log shall identify the person who conducted the inspections, the date of inspection, the date of cleaning or maintenance, the date of replacement of the absorbent insert, and any other actions taken as a result of the inspection. Owens-Brockway shall make the log available to CBE and Baykeeper during inspections of the Facility conducted by CBE and Baykeeper pursuant to the terms of this Agreement.

12.  <u>Facility Sweeping and Cleaning.</u> Prior to the Effective Date of this Agreement, Owens-Brockway shall have developed and begun implementing a site sweeping and cleaning plan ("Sweeping Plan") approved by CBE and Baykeeper.  The Sweeping Plan is intended to prevent or reduce the tracking of crushed glass, raw materials and other pollutants outside the active operational areas of the Facility, and to minimize the area where crushed glass, raw materials and other pollutants are dispersed.  The Sweeping Plan shall:

a.  Identify all areas to be swept and the method to be used to sweep each area;

b.  Require that, no later than the beginning of the Wet Season (October 1), all accessible paved areas, including driveways and the street in front the entrances and exits to the Facility, be swept using a regenerative-type sweeper;

c.  Require that, during each Wet Season (October 1 to May 31), all accessible paved areas be swept at least ten (10) times using a regenerative-type sweeper;

-5-

1         d.  Require that, during each Dry Season (June 1 through September 30), all

2 accessible paved areas be swept at least three times using a regenerative-type sweeper;

3         e.  Require that all waste generated by site sweeping and storm drain cleaning be

4 collected and disposed of in a manner that complies with all local, state, and federal laws.

5      Owens-Brockway shall review and update this Sweeping Plan annually, or more

6 frequently as circumstances warrant. Owens-Brockway shall provide CBE and Baykeeper with a

7 copy of the updated Sweeping Plan on or before July 15th of each year during the term of this

8 Agreement.  CBE and Baykeeper shall have thirty (30) days after receipt of the updated Sweeping

9 Plan to propose revisions thereto, explaining in writing the basis of each such proposed revision.

10 If Owens-Brockway chooses not to adopt Plaintiffs' proposed revisions, the Parties agree to meet

11 and confer and work in good faith to resolve any outstanding issues.  Owens-Brockway shall

12 retain sole discretion as to the contents and implementation of the updated Sweeping Plan,

13 provided that it is intended to make reasonable progress towards achieving the Action Levels

14 specified in Exhibit A.

15     13.  Sweeping Log. During the term of this Agreement, Owens-Brockway shall prepare and

16 maintain a log or checklist of all site sweeping performed at the Facility. The log or checklist shall

17 demonstrate that all applicable site sweeping set forth in the Sweeping Plan has been completed.

18 The log shall contain the printed name and signature (or initials) of each Owens-Brockway

19 employee making this determination.  Owens-Brockway shall make the log available to CBE and

20 Baykeeper during any inspections of the Facility conducted by CBE and Baykeeper under this

21 Agreement.

22     14.  Tracking. Owens-Brockway shall implement appropriate additional BMPs to reduce or

23 prevent tracking of pollutants from the Facility by vehicle traffic, to the extent that the Sweeping

24 Plan and/or other actions required by this Agreement are insufficient to prevent such tracking.

25     15.  Mobile Equipment Inspection and Maintenance.  Owens-Brockway shall inspect

26 Facility mobile equipment (e.g., forklifts and payloaders) daily for evidence of leaks, and shall

27 clean up spills, drips, or leaks from such equipment as soon as reasonably possible, and in no

28 event later than in advance of forecasted rainfall events.  All mobile equipment maintenance or

-6-

1   repair shall be performed either indoors, or if outdoors, in an area of the Facility where the storm

2   water drains to the Facility basement.

3        16.  <u>Maintenance of Structural Controls.</u> Owens-Brockway shall maintain all structural

4   BMPs at the Facility, including berms and silt fences, in good operating condition.

5        17.  <u>Employee Training.</u> Thirty (30) days after the Effective Date of this Agreement,

6   annually thereafter, and within thirty (30) days of hiring new employees, Owens-Brockway shall

7   explain to all appropriate employees the requirements of this Agreement, the Facility SWPPP, and

8   the General Permit to the extent applicable to such employee.  Training shall focus on the

9   employee's role in implementing BMPs, sweeping, conducting Facility inspections, and collecting

10  storm water samples.  Training shall be conducted bilingually (i.e., Spanish/English or other

11  pertinent language) if appropriate to assist the employee in understanding the training.  Owens-

12  Brockway shall integrate any new training requirements resulting from this Agreement into the

13  Facility's SWPPP.

14       C.    **Storm Water Pollution Prevention Plan**

15       18.  <u>Management Measures.</u>  Prior to the Effective Date of this Agreement, Owens-

16  Brockway shall revise its Storm Water Pollution Prevention Plan (SWPPP) to incorporate the

17  requirements of this Agreement.  Owens-Brockway shall revise the SWPPP annually as necessary

18  to incorporate additional BMPs developed in accordance with the requirements of the General

19  Permit and this Agreement.

20       19.  <u>Designated Discharge Points.</u> Prior to the Effective Date of this Agreement, Owens-

21  Brockway shall identify all points from which storm water is discharged from the Facility

22  ("Designated Discharge Point").  Each Designated Discharge Point shall be identified and clearly

23  labeled on a Facility Site Map contained in the SWPPP.

24       20.  <u>Designation of Surface Flow and Pervious Surfaces.</u>  Prior to the Effective Date of this

25  Agreement, Owens-Brockway shall obtain a professional analysis of the site's hydraulic

26  continuity and shall update a Facility Site Map to identify the drainage of storm water throughout

27  the Facility, and the Facility's network of storm water sewers. Owens-Brockway shall also update

28  a Facility Site Map to show which portions of the Facility are pervious and which are impervious.

-7-

21.  <u>Review of SWPPP and Facility Site Map.</u>  Prior to execution of this Agreement, Owens-Brockway shall have amended its SWPPP and Facility Site Map to incorporate the obligations set forth in Part I of this Agreement, and shall have provided a copy of its revised SWPPP and Facility Site Map to CBE and Baykeeper.

22.  <u>Annual Comprehensive Site Compliance Evaluation.</u> At the conclusion of each Wet Season, Owens-Brockway shall: (a) conduct an Annual Comprehensive Site Compliance Evaluation, as specified in Section A, paragraph 9 of the General Permit, and (b) based on that Evaluation, revise the Facility's SWPPP to incorporate additional or modified BMPs that Owens-Brockway determines are necessary.

**D.**   **Storm Water Sampling and Analysis.**

23.  <u>Sampling Frequency.</u>  Owens-Brockway shall collect at least one storm water sample from Outfall 001 and Outfall 002 from at least four (4) storm events during the 2007-2008 Wet Season ("Year One"), four (4) storm events during the 2008-2009 Wet Season ("Year Two"), and three (3) storm events during the 2009-2010 Wet Season ("Year Three").  Owens-Brockway shall collect its samples (a) within the first hour that flow in an Outfall is observed; (b) from storm events that occur Monday through Friday, during the hours of 7a.m. to 5 p.m. ("Sampling Hours"), and (c) from storm events that are preceded by at least three (3) days without storm water discharges.  In the event that Owens-Brockway is unable to sample the required number of storm events before February 1st of each Wet Season, Owens-Brockway shall collect the remaining samples from any storm event occurring during Sampling Hours, provided the event is preceded by at least twenty-four (24) hours without discharge.

24.  <u>Storm Water Analysis.</u>  Owens-Brockway shall send each storm water sample collected pursuant to this Agreement to a California state certified environmental laboratory for analysis.  Each sample shall be analyzed for all of the parameters listed in Exhibit A using the analytical methods or achieving the detection limits given therein. Within fifteen (15) days of receiving the laboratory analysis of a storm water sample taken pursuant to paragraph 23, Owens-Brockway shall send the complete analysis to CBE and Baykeeper.  The analysis shall be accompanied by a letter from Owens-Brockway identifying any parameter in excess of the Action

-8-

1   Levels identified in Exhibit A, with an explanation, if known, of the source or cause of the

2   exceedance and a description of the actions, if any, that Owens-Brockway is considering in

3   response to the exceedance.  Should operations materially change at the Facility, Owens-

4   Brockway shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R.

5   section 131.38 likely to be present in Owens-Brockway's storm water discharges as a result of the

6   changed operations.  If three consecutive samples collected from an Outfall during one Wet

7   Season have concentrations of a particular parameter below the Action Level for that parameter

8   set forth in Exhibit A, then Owens-Brockway does not have to analyze the other samples collected

9   during that Wet Season for that particular parameter, unless otherwise required by the General

10   Permit.

11       25.  Annual Action Plan.  If the laboratory analyses of storm water samples taken pursuant

12   to paragraph 23 show a concentration of any parameter in excess of the Action Levels specified in

13   Exhibit A (except for zinc, which is addressed in paragraph 26 below), then on or before July 15th

14   following the Wet Season in which the sample was taken, Owens-Brockway shall prepare and

15   send to CBE and Baykeeper an Action Plan designed to make reasonable progress towards either

16   achieving the Action Levels for any parameter that is in excess thereof or reducing the volume of

17   storm water and associated pollutants being discharged from the Facility.  The Action Plan shall

18   set forth the sample results showing the exceedance, the possible cause and/or the source of the

19   exceedance, any action that Owens-Brockway is proposing to undertake in response to the

20   exceedance, and a reasonable timeframe for implementation.

21       To the extent appropriate in developing the Action Plan, Owens-Brockway shall consider

22   the following:

23          a.   Whether it is feasible to increase the amount of storm water directed to the

24   Facility's basement for use as cooling water;

25          b.   The installation of additional berms or equivalent structural controls in

26   appropriate paved portions of the Facility;

27          c.   Calculating the total storm water discharge from the Facility as estimated

28   from rainfall and using appropriate run-off coefficients, or by installing flow meters, the purpose

-9-

1    of which would be to determine whether additional on-site use of storm water is feasible (as

2    mentioned in subparagraph a above);

3         d.    Implementing BMPs to reduce or prevent the discharge of storm water

4    from the Facility of industrial pollutants onto public streets, which may include storing materials

5    or equipment in a manner that reduces or prevents the discharge of pollutants from the Facility

6    resulting from material spillage or tracking onto the parking lots or driveways surrounding the

7    Facility;

8         e.    Constructing and operating detention ponds, detention tanks and/or a

9    perimeter trench to detain storm water runoff from the Facility;

10        f.    Installing treatment systems for the treatment of storm water prior to

11   discharge;

12        g.    Installing a piping system to convey storm water to the local publicly

13   owned treatment works sanitary sewage collection system and discharging some or all storm

14   water that currently discharges from the Facilities to this collection system;

15        h.    Identifying and segregating pollutant-generating materials away from areas

16   that discharge storm water from the Facility

17        If CBE and Baykeeper believe that Owens-Brockway's proposed Action Plan will not

18   make reasonable progress toward achieving the Action Levels or reducing the amount of storm

19   water discharged from the Facility, CBE and Baykeeper shall have thirty (30) days after receipt of

20   the Action Plan to comment on and propose revisions thereto. If Owens-Brockway chooses not to

21   adopt Plaintiffs' proposed revisions, the Parties agree to meet and confer and work in good faith

22   to resolve any outstanding issues.  Owens-Brockway shall retain sole discretion as to the contents

23   and implementation of the Action Plan, provided it is intended to make reasonable progress

24   towards either achieving the Action Levels specified in Exhibit A or reducing the volume of

25   storm water and associated pollutants being discharged from the Facility.

26        26. Zinc Source Identification Study.  By July 15, 2008, Owens-Brockway shall undertake

27   a study to identify potential sources of and possible control measures for zinc in its storm water.

28   At a minimum, this study will include the following:

-10-

a.   storm water sample analysis to determine  the concentration of dissolved zinc;

b.   a list of potential sources of zinc at the Facility and an estimate of each source's relative contribution;

c.   a list of actions and/or BMPs considered by Owens-Brockway to reduce the mass of zinc being discharged in the Facility's storm water, including an analysis of the feasibility of diverting roof runoff or other storm water to the Facility's basement for use as cooling water;

d.   the actions and/or BMPs that Owens-Brockway proposes to undertake during the term of the Agreement to reduce the zinc being discharged from the Facility.

CBE and Baykeeper shall have thirty (30) days after receipt of the zinc study to comment on and propose revisions thereto.  If Owens-Brockway chooses not to adopt Plaintiffs' proposed revisions, the Parties agree to meet and confer and work in good faith to resolve any outstanding issues.  Owens-Brockway shall retain sole discretion over the identification and implementation of control measures for zinc, provided that those measures are intended to make reasonable progress towards achieving the zinc Action Level specified in Exhibit A or reducing the mass of zinc discharged by the Facility.

27.  <u>Liquidated Payments.</u>  By July 15th of each year during the term of this Agreement, Owens-Brockway shall make the following Liquidated Payments to the Rose Foundation for Communities and the Environment ("Rose Foundation"):

a.   Fifteen hundred dollars ($1,500) for any storm water sample containing any parameter in a concentration in excess of the Benchmark levels specified in Exhibit A, with the total annual payments not to exceed $12,000 in Year One (2007-2008), $12,000 in Year Two (2008-2009), and $9,000 in Year Three (2009-2010);

b.   Three hundred and fifty dollars ($350) per day for every business day (Monday through Friday, excluding state and federal holidays) past the due date on which Owens-Brockway is required to submit to CBE and Baykeeper the reports and documents listed in Exhibit B.  The daily penalties shall accrue for a maximum of fifteen (15) business days unless Owens-Brockway is notified in writing by either CBE or Baykeeper of its failure to have timely submitted a required document or report, in which case, the daily penalties shall continue accruing on the

-11-

1    fifth business day after Owens-Brockway's receipt of such notification and shall continue

2    thereafter until Owens-Brockway has provided the Plaintiffs with the required document or report;

3    and

4                    c.   Three thousand five hundred dollars ($3,500) for each failure of Owens-

5    Brockway to collect a storm water sample required by paragraph 23 of this Agreement, unless

6    Owens-Brockway's failure to sample the number of requisite storm events is excused by the

7    insufficient occurrence of storm events during the Wet Season or other force majeure.

8          Payments to The Rose Foundation shall be sent via overnight mail to:  6008 College

9    Avenue, Oakland, CA  94618, Attn: Tim Little.  Notice of these payments shall be sent to CBE

10   and Baykeeper at the time the payments are made.  The Rose Foundation shall use any such

11   payments for projects that benefit the environment of the San Francisco Bay-Delta watershed.

12   CBE and Baykeeper shall ensure that Owens-Brockway receives a copy of the Rose Foundation's

13   accounting to the Department of Justice of how these payments were used.

14         28.  Reduction in Liquidated Payments.  Owens-Brockway shall be allowed a 50%

15   reduction of any Liquidated Payments due in any given year pursuant to the preceding paragraph

16   if Owens-Brockway tenders the reduced payment to the Rose Foundation and provides to CBE

17   and Baykeeper a certification signed under penalty of perjury that Owens-Brockway, before July

18   15th of the following year, will spend or be under contract to spend the balance of the sum that

19   would otherwise be paid to The Rose Foundation, on a project or projects of Owens-Brockway's

20   own choosing that are designed, in whole or in part, to reduce storm water discharges or pollutants

21   in storm water discharges from the Facility, or to reduce the tracking or dispersion of pollutants

22   from the Facility that might otherwise be entrained in storm water ("Storm Water Projects").

23   Owens-Brockway will provide CBE and Baykeeper with a written description of the Storm Water

24   Projects it undertakes pursuant to this paragraph, along with documentation of its expenditures

25   thereon.  If Owens-Brockway fails to spend (or be under contract to spend) the required amount,

26   then it must pay the unspent balance of the Liquidated Payment to the Rose Foundation within

27   thirteen (13) months from the date the payment was originally due.  Owens-Brockway must also

28   pay 5% per annum interest on the balance, calculated from the date the Liquidated Payment was

-12-

1    originally due until paid in full.  The Storm Water Projects cannot be used to fulfill a specific

2    obligation otherwise required by the Agreement.

3         29.  <u>Reporting.</u> On or before July 15th of each year during the term of this Agreement,

4    Owens-Brockway shall provide to CBE and Baykeeper a summary, in tabular format, of all storm

5    water sampling and analysis results undertaken during the preceding Wet Season pursuant to

6    paragraphs 23 and 24, above.

7         30.  <u>Copies of Documents.</u> During the term of this Agreement, Owens-Brockway shall

8    provide CBE and Baykeeper with copies of (a) Owens-Brockway's Annual Report to the State

9    Water Resources Control Board as required by the General Permit, on or before July 15th of each

10   year; (b) any other submittal to the San Francisco Bay Regional Water Quality Control Board

11   and/or the State Water Resources Control Board regarding the Facility's compliance with the

12   General Permit, within seven (7) days of such submittal; and (c) any revisions to the Facility's

13   SWPPP, within seven (7) days of such revisions being adopted by Owens-Brockway.

14        31.  <u>Site Inspections and Sampling.</u> CBE and Baykeeper may perform up to five (5)

15   physical inspections of the Facility during the term of this Agreement, upon written request and

16   with at least forty-eight (48) hours' notice.  Inspections may include sampling of surface water at

17   the Facility and the taking of photographs, video/film and field notes, although no photographs or

18   videos can be taken of any equipment or process that Owens-Brockway considers to be

19   confidential or proprietary.  CBE and Baykeeper representatives will be accompanied on their

20   inspections by one or more representatives of Owens-Brockway, who shall have discretion to

21   deny access to any portion of the Facility deemed unsafe for visitors or that would pose a

22   significant interference with business operations.  CBE and Baykeeper shall provide Owens-

23   Brockway with a copy of all sampling analyses, photographs, and videos from their inspections.

24   **II.  MITIGATION PAYMENTS, FEES, AND COSTS**

25        32.  <u>Environmental Mitigation Fund.</u>  Owens-Brockway shall pay a total of $45,000, in

26   three equal payments of $15,000 each, to The Rose Foundation, which shall be used on projects

27   that will benefit the environment of the San Francisco Bay-Delta watershed.  The first such

28   payment shall be made within thirty (30) days of the Effective Date of this Agreement.  The

-13-

remaining two payments shall be made on or before the second and third anniversary dates of the Effective Date of this Agreement.  Owens-Brockway shall send these payments via overnight mail to 6008 College Avenue, Oakland, CA 94618, Attn: Tim Little. Notice of the payments shall be sent to CBE and Baykeeper at the time the payment is made.  CBE and Baykeeper shall ensure that Owens-Brockway receives a copy of The Rose Foundation's accounting to the Department of Justice of how this payment was used.

33.  <u>Reimbursement of Fees and Costs.</u>  Within thirty (30) days of the Effective Date of this Agreement, Owens-Brockway shall pay CBE and Baykeeper $70,000 to defray the reasonable costs incurred in investigating the activities at the Facility related to this Agreement, bringing these matters to Owens-Brockway's attention, and negotiating a resolution of this Lawsuit in the public interest.  Such reasonable costs include those resulting from investigation fees and costs, expert fees and costs, and attorney's fees and costs.

34.  <u>Compliance Monitoring Funds.</u>  Owens-Brockway shall contribute $2,000 per year for each of the three years covered by this Agreement to a compliance monitoring fund maintained by CBE and Baykeeper to defray their reasonable costs and fees associated with monitoring Owens-Brockway's compliance with the terms of this Agreement. Monitoring activities include site inspections, review of water quality sampling reports, review of annual reports, discussion with Owens-Brockway representatives concerning potential changes to compliance requirements, water quality sampling, and informal dispute resolution, etc.  The first such payment shall be made to Baykeeper within thirty (30) days after the Effective Date of this Agreement.  The remaining two payments shall be made on or before the second and third anniversary dates of the Effective Date of this Agreement.

## III. DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT  AGREEMENT

35.  <u>Meet and Confer.</u>  If a dispute under this Agreement arises or either Party believes that a breach of this Agreement has occurred, the Parties shall meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to determine whether a breach has occurred and to attempt to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute or cure the breach.

-14-

36. <u>Mediation.</u>  If the Parties fail to meet and confer or the meet-and-confer does not resolve the issue, after at least seven days have passed after the meet-and-confer occurred or should have occurred, the Parties may mutually agree to mediation, the cost of which is to be borne by Owens-Brockway.  Mediation shall be completed within sixty-five (65) days from the date the Parties agree to enter into mediation, or as soon thereafter as is possible in accordance with a mutually-selected mediator.  The Parties stipulate to using Daniel Bowling of the Northern District ADR program as a mediator.  In the event Mr. Bowling is unavailable, the Parties stipulate to retain the San Francisco office of JAMS to conduct such mediation.  If the Parties fail to resolve the issue through mediation, or if any party chooses not to enter into mediation, then the Parties shall be entitled to all rights and remedies under the law, including filing a motion with the District Court of the Northern District of California, which shall retain jurisdiction over this action for the limited purposes of enforcement of the terms of this Agreement.  The party who prevails on the motion shall be entitled to fees and costs pursuant to the provisions set forth in section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## IV.  WAIVER AND RELEASES

37. <u>CBE and Baykeeper.</u>  As of the Effective Date of this Agreement, CBE and Baykeeper, on their own behalf and on behalf of their members, officers, directors, attorneys, agents, servants, stockholders, employees, representatives, affiliates, subsidiary and parent corporations, partners, assigns, successors, and any other person or entity whom CBE and/or Baykeeper purport to represent:

a.   release and discharge Owens-Brockway and its officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants and other representatives (each a "Released Party") from any and all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, or which could have been claimed, for matters associated with or related to the 60-day Notices, the Clean Water Act, the General Permit, or California's Health &

-15-

1   Safety Code section 25249.5 *et seq.,* as those laws may relate to storm water discharges from the

2   Facility, (each and all a "Storm Water Law"), whether known or unknown, including, without

3   limitation, all such matters concerning or relating to the alleged failure of Owens-Brockway to

4   comply with any Storm Water Law at the Facility up to the Effective Date of this Agreement.

5          b.   release and discharge Owens-Brockway and each Released Party from any and all

6   claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of

7   attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, or which

8   could be claimed with respect to any discharges of storm water from the Facility in alleged

9   violation of any Storm Water Law that may arise during the term of this Agreement.

10         c.   covenant not to sue Owens-Brockway or any Released Party with respect to any

11  alleged violations of any Storm Water Law at the Facility that may arise during the term of this

12  Agreement.

13         38.  <u>Owens-Brockway.</u>  As of the Effective Date of this Agreement, Owens-Brockway, on

14  its own behalf and on behalf of its officers, directors, agents, servants, stockholders, employees,

15  representatives, affiliates, subsidiary and parent corporations, partners, assigns and successors,

16  hereby fully releases and forever discharges CBE, Baykeeper, and their members, officers,

17  directors, attorneys, agents, servants, stockholders, employees, representatives, affiliates,

18  subsidiary and parent corporations, partners, assigns and successors from any and all rights,

19  claims and actions related to or arising out of the matters and alleged violations of Storm Water

20  Law asserted in the Lawsuit.

21         39.  <u>Stipulation and Order for Dismissal.</u>  Upon execution by all Parties, the Plaintiffs shall

22  lodge this Agreement with the Court, along with a letter explaining the 45-day Department of

23  Justice review period required by the Clean Water Act.  Plaintiffs shall also forward a copy of the

24  Agreement to the Department of Justice for its review under the Clean Water Act, 33 U.S.C.

25  section 1365(c).  At the time this Agreement is submitted to the Court for approval, the Parties

26  shall file with the Court a Stipulation and Order that shall provide that:

27         a.   the Complaint and all claims therein shall be dismissed with prejudice

28  pursuant to Fed. R. Civ. P. 41(a)(2); and

-16-

b.      the Court shall retain and have jurisdiction over the Parties for the purposes of enforcing the terms of this Agreement.

40. <u>No Admission of Liability</u>.  The Parties enter into this Agreement for the purpose of avoiding prolonged and costly litigation.  Nothing in this Agreement shall be construed as, and Owens-Brockway expressly does not intend to imply, an admission as to any fact, finding, issue or law, or violation of law, nor shall compliance with this Agreement constitute or be construed as an admission by Owens-Brockway of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Agreement.

## V. MISCELLANEOUS PROVISIONS

41. <u>Effective Date</u>.  The "Effective Date" of this Agreement is the date that the Court enters a final judgment pursuant to the stipulated dismissal referred to in paragraph 39. The Parties expressly waive any right they may have to appeal the final judgment upon entry by the Court.

42. <u>Termination.</u>  This Agreement – and the Parties' respective rights to enforce any obligations hereunder – shall terminate on the "Termination Date," defined for purposes of this Agreement as three (3) years after the Effective Date.

43. <u>Force Majeure.</u>  No Party shall be considered to be in default in the performance of any of its obligations under this Agreement when performance becomes impossible, despite the timely good-faith efforts of the party, due to circumstances beyond the Parties' control, including, without limitation, any act of God, war, fire, earthquake, flood, and restraint by court order or public authority.  Circumstances beyond the parties' control shall not include normal inclement weather, economic hardship, or inability to pay.  Any party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been able to overcome, the impossibility of performance.

44. <u>Integrated Agreement.</u> This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all prior discussions, negotiations, commitments and understandings related hereto. No other agreements,

1  covenants, representations, or warranties not specifically referred to herein, express or implied,

2  oral or written, shall be deemed to exist or to bind any of the Parties.

3      45. <u>Modification.</u> This Agreement may only be modified by the written agreement of all

4  Parties hereto. Any such modification shall only become effective upon approval by the Court.

5      46. <u>Successors.</u> This Agreement shall apply to, be binding upon, and inure to the benefit

6  of, the Parties and their successors and assigns.

7      47. <u>Notices.</u> Any notice to CBE and Baykeeper required or permitted by this Agreement

8  shall be sent via electronic mail to the following e-mail addresses (unless impracticable):

9  slazerow@cbecal.org, abloch@cbecal.org, and amy@baykeeper.org.  To the extent electronic

10 transmission is impracticable, a hard copy shall be mailed to CBE and Baykeeper at the addresses

11 below:

12 Shana Lazerow
   Communities for a Better Environment
13 1400 Broadway, Suite 701
   Oakland, California  94612

14
   Amy Chastain
15 Baykeeper
   785 Market Street, Suite 850
16 San Francisco, California  94103

17

18 Any notice to Owens-Brockway required or provided for by this Agreement shall be sent by U.S.

19 Mail to the following individuals at the following addresses:

20 Loren Johnson
   Plant Manager
21 Owens-Brockway Glass Container Inc.
   3600 Alameda Avenue
22 Oakland, CA  94601

23 Susan L. Smith
   Three O-I Plaza – Legal Dept.
24 One Michael Owens Way
   Perrysburg, OH  43551-2999

25

26 With copies to:

27 Rocky N. Unruh
   James R. Balich
28 Sarah D. Youngblood

-18-

Schiff Hardin LLP
One Market, Spear Street Tower
32nd Floor
San Francisco, CA 94105

48. <u>Payments.</u> Any payment required in this Agreement to be made to CBE and Baykeeper should be made payable to Baykeeper and hand-delivered or sent via overnight mail to 785 Market Street, Suite 850, San Francisco, California 94103.

49. <u>Execution in Counterparts.</u> This Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

50. <u>Facsimile Signatures.</u> Signatures of the Parties to this Agreement transmitted by facsimile shall be deemed binding.

51. <u>Continuing Jurisdiction of Court.</u> The "Court" specified in this Agreement is the United States District Court for the Northern District of California. The Court shall retain jurisdiction to enforce all provisions of this Agreement during its term.

52. <u>Court Approval.</u> The Parties enter into this Agreement and intend to submit it to the Court for its approval and entry as a final judgment, pursuant to the terms of the stipulation and order described in paragraph 39 above. If for any reason the Court should decline to approve this Agreement in the form presented, the Parties agree to negotiate in good faith to modify the Agreement to address the Court's concerns. If these negotiations do not result in a revised Agreement that is acceptable to the Court, then this Agreement shall be deemed null and void.

COMMUNITIES FOR A BETTER ENVIRONMENT

Date: _____, 2008

By: _____
    Bill Gallegos, Executive Director

BAYKEEPER

Date: _____, 2008

By: _____
    Deb Self, Executive Director

-19-

Case No. CV 06-07853 JSW

Schiff Hardin LLP
One Market, Spear Street Tower
32nd Floor
San Francisco, CA  94105

48. Payments. Any payment required in this Agreement to be made to CBE and Baykeeper should be made payable to Baykeeper and hand-delivered or sent via overnight mail to 785 Market Street, Suite 850, San Francisco, California  94103.

49. Execution in Counterparts. This Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

50. Facsimile Signatures. Signatures of the Parties to this Agreement transmitted by facsimile shall be deemed binding.

51. Continuing Jurisdiction of Court. The "Court" specified in this Agreement is the United States District Court for the Northern District of California. The Court shall retain jurisdiction to enforce all provisions of this Agreement during its term.

52. Court Approval. The Parties enter into this Agreement and intend to submit it to the Court for its approval and entry as a final judgment, pursuant to the terms of the stipulation and order described in paragraph 39 above.  If for any reason the Court should decline to approve this Agreement in the form presented, the Parties agree to negotiate in good faith to modify the Agreement to address the Court's concerns. If these negotiations do not result in a revised Agreement that is acceptable to the Court, then this Agreement shall be deemed null and void.

COMMUNITIES FOR A BETTER ENVIRONMENT

Date: _____, 2008

By: _____
    Bill Gallegos, Executive Director


BAYKEEPER

Date: _January 23_, 2008

By: _____
    Deb Self, Executive Director

-19-

1   OWENS-BROCKWAY GLASS CONTAINER INC.

2   Date: Jan. 26, 2008

3   By: _____

4       Rodney Detmer, Vice President
        Area Manager – Western Region

5

6   APPROVED AND SO ORDERED, this  3rd  day of ___April___, 2008

7

8   _____

9   Hon. Jeffrey S. White
    United States District Court Judge
10  Northern District of California

11

12

13  SF\9036124.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-20-

Case No. CV 06-07853 JSW

EXHIBIT A

| Parameter | Analytical Method | Reporting Limit | Action Levels | Benchmarks[i] |
|---|---|---|---|---|
| Total Suspended Solids | EPA  160.2 | 2 mg/L | 100 mg/L | 100 mg/L |
| Total Oil & Grease | EPA  418.1 or 1664 | 5 mg/L | 15 mg/L | 15 mg/L |
| pH | EPA  150.1 or portable calibrated instrument | N/A | 6.5 – 8.5[ii] | 6.0 – 9.0 |
| Specific Conductance | EPA  120.1 or SM 2510-B or calibrated portable instrument | 5 µS/cm | 200 µS/cm | 200 µS/cm[iii] |
| Total Phosphorous as P | EPA  365.1 | 0.04 mg/L | 2.0  mg/L | 2.0 mg/L |
| Copper | EPA  200.8 & 1669 | 0.0010 mg/L | 0.0094 mg/L[iv] | 0.0636 mg/L |
| Lead | EPA  200.8 & 1669 | 0.0010 mg/L | 0.2200 mg/L[iv] | 0.8160mg/L |
| Zinc | EPA  200.8 & 1669 | 0.0050 mg/L | 0.0900 mg/L[iv] | 0.1170 mg/L |
| Nickel | EPA  200.8 & 1669 | 0.0010 mg/L | 0.0740 mg/L[iv] | 1.4170 mg/L |
| Aluminum | EPA  200.7 or 200.8 | 0.1000 mg/L | 0.7500 mg/L | 0.7500 mg/L |
| Iron | EPA  200.7 or 200.8 | 0.1000 mg/L | 1.0000 mg/L | 1.0000 mg/L |
| Molybdenum | EPA  200.7 or 200.8 | 0.1000 mg/L | 50.0000 mg/L[v] | - |
| Manganese | EPA  200.7 or 200.8 | 0.1000 mg/L | 1.0000 mg/L | 1.0000 mg/L |
| TPH as middle distillate | SW8015Cm  (report all peaks, sum C9-C12 for evaluation against action level) | 0.050 mg/L | 0.640 mg/L | 15 mg/L |

[i] All benchmarks and action levels are based on 65 Fed. Reg. 64767 (October 30, 2000), unless otherwise footnoted.
[ii] California State Resources Control Board, San Francisco Bay Region. Water Quality Control Plan, Section 3.3.9
[iii] DRAFT Waste Discharge Requirements (WDRs) for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (State Water Resources Control Board, 2005).
[iv] California State Resources Control Board, San Francisco Bay Region, Water Quality Control Plan, Section 3.3.21, Table 3-3, acute (1-hour average) objectives . All action levels are expressed as dissolved concentrations. The copper objective includes the recently adopted site-specific water effect ratio (San Francisco Bay Regional Water Quality Control Board, 2007a)
[v] Environmental Screening Levels (San Francisco Bay Regional Water Quality Control Board, 2007b)

# EXHIBIT B

## Reporting Requirements

| | |
|---|---|
| Updated Sweeping Plan (¶12) | July 15 of each year (2008, 2009, 2010) |
| Sampling Analyses with cover letter (¶24) | Within fifteen (15) days after receipt from lab |
| Action Plan (¶25) | July 15 of each year (2008, 2009, 2010) |
| Zinc Source Study (¶26) | July 15, 2008 |
| Notice of Liquidated Payments (¶27) | July 15 of each year (2008, 2009, 2010) |
| Annual Sampling Analyses Summary (¶29) | July 15 of each year (2008, 2009, 2010) |
| Annual Report (¶30) | July 15 of each year (2008, 2009, 2010) |
| Submissions to the Regional or State Water Boards re General Permit Compliance (¶30) | Within seven (7) days after submitting to the Regional or State Boards |
| Revised SWPPP (¶30) | Within seven (7) days after finalizing |